UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KAREN M. GUDYNOWSKI,

      Plaintiff,

v.                                             Case No.:  2:23-cv-305-DNF

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____

## OPINION AND ORDER

Plaintiff Karen M. Gudynowski seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA"), finding she was no longer disabled since April 1, 2017. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. Plaintiff also filed a reply. As explained below, the decision of the Commissioner is **AFFIRMED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.  Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A.  Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

**B.    Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo

standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

Generally, an ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. Yet when the issue is cessation of disability benefits, then the ALJ must follow an eight-step evaluation for a Title II claim and a seven-step process for a Title XVI claim to determine whether a plaintiff's disability benefits should continue. *See* 42 U.S.C. § 423(f); 20 C.F.R. §§ 404.1594(f), 416.994(b). Here, the ALJ followed an eight-step evaluation and the Court adopts the explanation of each step as set forth in the decision. (Tr. 720-21).

### C.   Procedural History

On July 14, 2008, Plaintiff was found disabled beginning on July 3, 2007. (Tr. 70, 370-83). On May 30, 2012, SSA reviewed the evidence in her disability claim and found that her disability was continuing. (Tr. 89-90, 419-20). On April 26, 2017, SSA determined that Plaintiff's health had improved since the last review of her case and she was no longer disabled as of April 1, 2017. (Tr. 87, 93-94). After a disability

hearing by a State agency Disability Hearing Officer, the determination was upheld upon reconsideration. (Tr. 88).

Plaintiff requested a hearing, and on March 4, 2019, a hearing were held before Administrative Law Judge ("ALJ") Maria C. Northington. (Tr. 36-67). On May 2, 2019, the ALJ entered a decision finding Plaintiff's disability ended on April 1, 2017, and she had not become disabled again since that date. (Tr. 15-29). On January 14, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1-5). Plaintiff appealed that decision to the District Court, and on January 15, 2021, the District Court reversed the decision and remanded the action to the Commissioner for further proceedings. (Tr. 799-801).

Based on the District Court's remand, the Appeals Council vacated the prior final decision of the Commissioner and remanded the action to the ALJ. On remand, the ALJ was to:

- If necessary, obtain evidence from a medical expert related to the nature and severity of and functional limitations resulting from the claimant's impairments (20 [C.F.R. §] 404.1513a(b)(2)).

- Give further consideration to whether medical improvement occurred pursuant to 20 [C.F.R. §] 404.1594.

- Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, give further consideration to the medical source opinions consistent with the applicable regulations.

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base. The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 [C.F.R. §] 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

  In compliance with the above, the Administrative Law Judge will offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision.

(Tr. 835-36).

On August 9, 2021 and November 15, 2021, the ALJ held hearings. (Tr. 759-98). On January 18, 2022, the ALJ entered a decision finding Plaintiff's disability ended on April 17, 2017, and she had not become disabled again since that date. (Tr. 716-749). On March 27, 2023, the Appeals Council found no reason under its rules to assume jurisdiction. (Tr. 705-709). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on May 3, 2023, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 10).

### D. Summary of ALJ's Decision

In this case, the ALJ found the most recent favorable medical decision finding Plaintiff was disabled was the decision dated May 30, 2012. (Tr. 721). The ALJ determined that this decision is known as the "'comparison point decision' or CPD." (Tr. 721). At the time of the CPD, the ALJ found Plaintiff to have the following medically determinable impairments: depression, bipolar disorder, and anxiety. (Tr. 721). "These impairments were found to meet section(s) 12.04 of 20 [C.F.R.] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §] 404.1520(d))." (Tr. 721).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") through the date of the decision. (Tr. 721). The ALJ noted that Plaintiff worked at part-time jobs at various times from 2016 through 2020. (Tr. 721). The ALJ also found that even though Plaintiff did not engage in SGA from April 1, 2017 through March 31, 2020, Plaintiff did engage in SGA since April 1, 2020. (Tr. 721). The ALJ found Plaintiff's work history consistent with her request for a closed period ending on March 31, 2020. (Tr. 721-22). The ALJ noted that Plaintiff testified at the hearing that in March 2020 she returned to work full-time plus overtime as a mail carrier for the postal service. (Tr. 722). The ALJ concluded, "Regardless, for the period between April 1, 2017 and March 31, 2020, the undersigned notes that this post-CPD work activity is far more consistent with the

ultimate findings of this decision than with an allegation of work-precluding debility." (Tr. 722).

At step two, the ALJ found that since April 1, 2017, Plaintiff has had the following medically determinable impairments: "bipolar disorder with depression and anxiety, post-traumatic stress disorder (PTSD), attention deficit hyperactivity disorder (ADHD), overweight, chronic obstructive pulmonary disease (COPD), hypertension, varicose veins, and MTHFR gene mutation." (Tr. 722). The ALJ further found that these impairments were Plaintiff's current severe and non-severe impairments. (Tr. 722). Since April 1, 2017, the ALJ found at step three that Plaintiff had not had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1525, 404.1526). (Tr. 722). The ALJ further found that medical improvement occurred on April 1, 2017. (Tr. 725).

At step four, the ALJ found that the medical improvement was related to the ability to work because by April 1, 2017, Plaintiff's CPD impairments no longer met or medically equaled the same listing that was met at the time of the CPD (20 C.F.R. § 404.1594(c)(3)(i)). (Tr. 728). At step six, the ALJ determined that since April 1, 2017, Plaintiff continued to have a severe impairment or combination of severe impairments. (Tr. 729).

At step seven, the ALJ found that since April 1, 2017, Plaintiff has had the

following residual functional capacity ("RFC"):

> Based on the impairments present since April 1, 2017, the
> claimant has no exertional limitations that implicitly include
> the performance of light to heavy work. She has no postural
> limitations with the exception of no climbing of ropes and
> scaffolds, but ladders are not excluded. She has no limitations
> regarding sitting, standing, and walking in an eight-hour
> workday. The claimant is to perform no work that would
> involve hazardous situations such as work at unprotected
> heights or work around dangerous machinery that may cause
> harm to self or others. In the course of work, the claimant is to
> have no exposure to extremes of heat, humidity, or cold
> temperatures. Notwithstanding her current skilled work, the
> claimant retains the capacity to understand, remember, and
> carry-out simple instructions and perform simple, routine tasks
> as consistent with unskilled work. In the course of work, the
> claimant is to have no in-person contact with the public, with
> the exception that incidental contact is not precluded. The
> claimant is to have only occasional contact with coworkers and
> supervisors, occasional being defined as occasional interaction
> and coordination, but not necessarily proximity to the same.

(Tr. 730).

At step eight, the ALJ determined that since April 1, 2017, Plaintiff has been

unable to perform her past relevant work as a correction officer and case worker.

(Tr. 746). The ALJ found that on April 1, 2017, Plaintiff was a younger individual.

(Tr. 747). The ALJ found that after considering Plaintiff's age (48 on April 1, 2017),

education (at least high school), work experience, and RFC, and based on the

impairments present since April 1, 2017, Plaintiff had been able to perform a

significant number of jobs in the national economy. (Tr. 747). Specifically, the

vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

(1)   House-Keeping Cleaner, DOT 323.687-014,[1] light, SVP 2

(2)   Bagger, DOT 920.687-018, light, SVP 1

(Tr. 747). The ALJ concluded that Plaintiff's disability ended on April 1, 2017, and she had not become disabled again since that date. (Tr. 748).

## II.   Analysis

On appeal, Plaintiff raises four issues:

(1)   Whether the ALJ properly considered the episodic nature of Plaintiff's bipolar disorder, given that the ALJ found this impairment severe, but included no limitations in the RFC or in the hypothetical to the vocational expert related to being off-task or absent from work;

(2)   Whether the ALJ's decision is legally sufficient and supported by substantial evidence, given the ALJ found Plaintiff had moderate limitations in adapting and managing herself, but included no limitations in the RFC or hypothetical questions;

(3)   Whether the ALJ's decision is legally sufficient and supported by substantial evidence, given the record does not appear to include all of the medical evidence from the CPD, including medical analysis that led to the continuance of Plaintiff's disability in 2012; and

(4)   Whether the ALJ's decision was supported by substantial evidence, given that the State agency limited Plaintiff to a very short, on-the-job training period.

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

(Doc. 13, p. 1-2). For the first two issues, the same legal authority applies to both and are combined.

### A. Episodic Nature of Bipolar Disorder and Adapting and Managing Oneself

Plaintiff contends that the ALJ erred in failing to account in the RFC assessment and hypothetical questions to the vocational expert for the episodic nature of Plaintiff's bipolar disorder and for her moderate limitations in adapting and managing oneself.

### 1. Legal Authority

An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a claimant's RFC, the ALJ must consider all relevant evidence including non-severe impairments. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). Furthermore, the ALJ must "'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981)). At step four, the task of determining a claimant's RFC and ability to work rests with the administrative law judge and not with a doctor. *Moore v. Comm'r of Soc. Sec.*, 649 F. App'x 941, 945 (11th Cir. 2016); *see also Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014), *Green v. Soc. Sec.*

*Admin.*, 223 F. App'x 915, 924 (11th Cir. 2007).

At step five of the sequential evaluation, the ALJ must determine whether jobs exist in significant numbers in the national economy that a plaintiff can perform. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). To make this determination, an ALJ may obtain the testimony of a vocational expert. *Id*. For the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). "If the ALJ presents the vocational expert with incomplete hypothetical questions, the vocational expert's testimony will not constitute substantial evidence." *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013). But an ALJ is not required to include findings in the hypothetical that the ALJ found to be unsupported by the record. *Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)).

### 2.    Episodic Nature of Bipolar Disorder

Plaintiff contends that the record contains "extensive evidence" showing that Plaintiff's bipolar disorder causes absenteeism and off-task time during a workday. (Doc. 13, p. 11). Plaintiff claims that even the Commissioner's own doctors agreed that Plaintiff would have difficulty completing a normal workday or workweek, yet,

the ALJ included no limitations for absenteeism or being off task in the RFC assessment or in the hypothetical question to the vocational expert. (Doc. 13, p. 13).

Plaintiff cites the November 2021 hearing testimony of medical expert Joseph M. Carver, Ph.D. in support of her arguments. At the hearing, Dr. Carver testified that under the "paragraph B" criteria of Listing 12.04, Plaintiff has at most moderate limitations. (Tr. 778-79). As to the "paragraph C' criteria, Dr. Carver found "that it's likely that [Plaintiff] might meet that second part or she might meet the "C" criteria. When that happens, people decompensate with minimal, minimal reasons, minimal stimulation. And, of course, we kind of see that happen in 14E. The claimant is simply asked to write down a couple of things and when she gets going she can't stop." (Tr. 779-80). Dr. Carver "suggested" that Plaintiff "might meet" the paragraph C criteria due to her multiple years of treatment with multiple medications, and her inability to do anything more than just part-time work before her full-time employment at the post office. (Tr. 780).

In the decision, the ALJ considered Dr. Carver's testimony. (Tr. 740). The ALJ assigned little weight to Dr. Carver's opinion that Plaintiff might meet the second criteria under paragraph "C." She found this opinion inconsistent with other evidence of record, citing numerous other medical records. (Tr. 740).

Prior to considering Dr. Carver's testimony, the ALJ also considered the opinions of State agency reviewing psychologists, Jessy Sadovnik, Psy.D. and David

Tessler, Psy.D. (Tr. 738-39). On April 19, 2017, Dr. Sadovnik found Plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. (Tr. 82). Dr. Sadovnik explained that Plaintiff was moderately limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (Tr. 82). He also found Plaintiff had moderate limitations in maintaining a normal workday without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods. (Tr. 82). But even with this finding, Dr. Sadovnik concluded, "[c]laimant can be expected to perform simple and repetitive tasks and to meet the basic mental demands of work on a sustained basis despite any limitations resulting from identified MDIs [medically determinable impairments]." (Tr. 83). The ALJ found Dr. Sadovnik opinion generally consistent with the objective evidence of record, "particularly the portion of the opinion in which [Dr. Sadovnik] opined that the claimant can be expected to perform simple and repetitive tasks and to meet the basic mental demands of work on a sustained basis despite any limitations resulting from identified medically determinable impairments." (Tr. 738). Thus, while Dr. Sadovnik found Plaintiff had moderate limitations in being able to maintain a normal workday or workweek, he concluded that even with her mental limitations, she could meet the basic mental demands of work on a sustained basis. (Tr. 83).

Likewise, the ALJ considered the opinion of Dr. Tessler dated July 25, 2017. (Tr. 738-39). Dr. Tessler found Plaintiff was moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual. (Tr. 493). He also found Plaintiff moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to be able to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 494). Even with these findings, Dr. Tessler concluded that Plaintiff had the ability to, "maintain attention and concentration for periods of at least two hours duration. Claimant may have occasional interruptions from psychologically based symptoms, but has the ability to complete a normal workday and work week without an unreasonable number and length of rest periods." (Tr. 495). The ALJ found Dr. Tessler's opinion generally consistent with the objective evidence of record, particularly the portion of the opinion in which he found that the claimant appears capable of completing basic work activities on a sustained basis. (Tr. 739).

Plaintiff relies on *Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042, 1047 (11th Cir. 2020) for the proposition that if the record shows that a plaintiff is moderately limited in her ability to maintain a regular work schedule, the ALJ must account for this in the RFC and hypothetical to the vocational expert. (Doc. 13, p. 11). In *Samuels*, however, the ALJ did not discuss the effects of the plaintiff's bipolar

disorder on his ability to maintain a work schedule and remain on task. *Samuels*, 959 F.3d at 1047. By contrast, here, the ALJ thoroughly summarized the medical evidence of record in her lengthy decision, including the medical opinions that support Plaintiff's position and those that do not, and provided substantial reasons to support her decision. (Tr. 736-46).

In effect, Plaintiff invites the Court to reweigh the evidence, which it cannot do. A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). Here, substantial evidence supports the ALJ's RFC assessment and hypothetical questions to the vocational expert.

### 3. Adapting and Managing Oneself

In the decision, the ALJ found Plaintiff had up to a moderate limitation in adapting or managing oneself. (Tr. 724). Plaintiff argues that the ALJ failed to account for any of these limitations in the RFC or in the hypothetical to the vocational expert.

Under the regulations, adapting or managing oneself "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." 20

C.F.R. § 404, subpt. P, app 1, 12.00(e)(b)(iv). Some examples are responding to demands, adapting to changes, managing your psychologically based symptoms, distinguishing between acceptable and unacceptable work performance, setting realistic goals, making plans for yourself independently of others, maintain personal hygiene and attire appropriate to a work setting, and being aware of normal hazards and taking appropriate precautions. (*Id.*).

The ALJ's reasoning appears to focus on why Plaintiff did not have more than a moderate limitation in this area. (Tr. 724). For example, the ALJ noted that Plaintiff did not usually complain about serious problems with adaption and managing herself, her medical providers' records generally did not show any deficiencies in hygiene or appropriate attire, and there was no evidence that Plaintiff was unaware of normal hazards and took appropriate precautions. (Tr. 724). The ALJ also noted that Plaintiff handled the mental demands of working part-time, driving, handled activities of daily living independently, and watched her grandchild, even though these activities were likely to cause stress. (Tr. 724).

In the decision, the ALJ found:

> An analysis of the medical evidence of record strongly supports that the claimant is capable of work consistent with the residual functional capacity finding as evidenced by mental status examination findings and the claimant's high functioning activities of daily living like driving, watching television, caring [for] a grandchild, doing yard work, gardening, reading, applying for jobs, and being generally independent with self-care, as detailed below.

(Tr. 731). The ALJ supported these statements by citing an April 18, 2017 objective psychological examination by Paula Bowman, Psy.D. (Tr. 731). From the objective examination, the ALJ noted that Dr. Bowman found Plaintiff was cooperative, had adequate manner of relating, social skills, and overall presentation, and further noted:

> that the claimant with her stated age, was appropriately dressed, had adequate personal grooming and hygiene, use[s] no assistive devices, normal posture, normal motor behavior, appropriate eye contact, fluent speech intelligibility, clear quality of voice, adequate expressive and receptive languages, coherent, goal-directed thought processes, no evidence of delusions, hallucinations, or distorted thinking, congruent affect, mood that she reported as feeling okay, clear sensorium, oriented, intact attention and concentration, able to do counting, simple calculations, and serial threes, mildly impaired memory skills, average estimated intellectual functioning, appropriate general fund of information, and fair judgment and insight. Dr. Bowman additionally found that the claimant reported showering once weekly, dressing daily, making simple meals, light cleaning daily, will [do] laundry once weekly, grocery shopping twice monthly, that she has a valid driver's license, manages her own money, and that she spends her time watching television and working 15 hours weekly, as well as socializing with her roommate and daughter. She then diagnosed the claimant with bipolar two disorder, most recent episode depressed, moderate, unspecified anxiety disorder, and ADHD, inattentive type.

(Tr. 732 (citing Tr. 422-26)). Dr. Bowman concluded that the results of the examination appear to be consistent with psychiatric and cognitive problems, but "in itself this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." (Tr. 425). Thus, Dr. Bowman's opinion supports

- 17 -

the ALJ's finding and RFC assessment that Plaintiff had up to moderate limitations in adapting and managing oneself, but these limitations are not significant enough to interfere with Plaintiff's ability to function on a daily basis. Plus, Plaintiff cites no medical opinion evidence of record establishing that these moderate limitations result in greater RFC limitations than found by the ALJ.

The ALJ also discussed Plaintiff's high functioning daily activities and found they supported Plaintiff's ability to perform work consistent with the RFC finding. (Tr. 737). The ALJ discussed Plaintiff being generally independent with self-care, driving, managing her own money, watching television, socializing with her roommate and daughter, watching her grandchild, doing yard work, and working part-time for a significant portion of the relevant period. (Tr. 740). These daily activities support the ALJ's assessment that Plaintiff can perform work despite moderate limitations in adapting and managing oneself.

Plaintiff also argues that the ALJ erred in failing to include limitations for adapting and managing oneself in the hypothetical questions to the vocational expert. The success of this argument relies on the ALJ's RFC assessment to be in error. It is not. Thus, the ALJ presented hypothetical questions to the vocational expert that encompassed all of Plaintiff's limitations that were supported by the record.

Next, Plaintiff argues that intertwined with the ALJ's failure to properly address Plaintiff's limitations for adapting and managing oneself, the ALJ also failed

- 18 -

to comply with the Appeals Council's remand order. (Doc. 13, p. 16). Plaintiff claims that in the prior decision, the ALJ found Dr. Bowman's opinion persuasive that Plaintiff had mild to moderate difficulty regulating emotions, controlling behavior, and maintaining well-being, which all relate to adapting and managing oneself. (Doc. 13, p. 16). The Appeals Council found that the ALJ did not specifically explain how the ALJ accounted for these limitations in the RFC and Plaintiff argues the ALJ again failed to account for these limitations in the most recent RFC assessment. (Doc. 13, p. 16). As the Court found above, the ALJ properly considered Plaintiff's limitations, the medical evidence of record, as well as Plaintiff's high-functioning activities of daily living to assess Plaintiff's RFC. Substantial evidence supports the ALJ's RFC assessment and hypothetical questions to the vocational expert.

### B.   Evidence from the Comparison Point Decision ("CPD")

Plaintiff argues that before terminating benefits, the ALJ is required compare the medical evidence on which Plaintiff was originally found to be disabled with the newer medical evidence of record. (Doc. 13, p. 18). Plaintiff claims that the record appears to be missing some of the information pertaining to the CPD and argues that the ALJ could not have performed a proper continuing disability review. (Doc. 13, p. 19).

In essence, Plaintiff argues that she was originally found to be disabled based on Listing 12.04 in 2008. (Doc. 13, p. 19). On May 31, 2012, SSA continued Plaintiff's disability benefits, but Plaintiff argues that there is no information in the record showing whether Plaintiff's disability in May 2012 was continued based on meeting the same Listing or some other criteria. (Doc. 13, p. 19). Even if Plaintiff were found disabled under Listing 12.04 in May 2012, Plaintiff argues that the ALJ failed to analyze Plaintiff's impairments under Listing 12.04 that was in effect in May 2012, and only performed an analysis under the new Listing 12.04, effective in 2017. (Doc. 13, p. 20).

"An ALJ may terminate a claimant's benefits if there is substantial evidence that there has been medical improvement in the claimant's impairments related to his ability to work, and the claimant is now able to engage in substantial gainful activity." *Klaes v. Comm'r, Soc. Sec. Admin.*, 499 F. App'x 895, 896 (11th Cir. 2012). At step three, the ALJ must determine whether Plaintiff had "medical improvement," which is defined as any decrease in the medical severity of a plaintiff's impairments, which were present at the most recent favorable decision. *Id.* (citing 20 C.F.R. § 404.1594(b)(1)). "More specifically, whether medical severity has decreased 'is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s).'" *Id.* The ALJ must

actually compare the previous and current medical evidence. *Id.* If the ALJ fails to evaluate the prior medical evidence and make a comparison, then a court must reverse and remand the application. *Id.*

In the decision, at finding 5, the ALJ considered whether Plaintiff's impairments met or equaled the criteria of Listing 12.04, 12.06, 12.11, and 12.15. (Tr. P. 722). The ALJ carefully analyzed the "paragraph B" criteria as well as the "paragraph C" criteria, and found that they did not. (Tr. 722-23).

At finding 6, the ALJ discussed medical records prior to and after the CPD date. (Tr. 725-27). The ALJ noted that in July 2008, Plaintiff was found to have met the previous listing for 12.04 with symptoms of anhedonia or pervasive loss of interest in almost all activities, appetite disturbances, sleep disturbance, decreased energy, or difficulty concentrating or thinking. (Tr. 725). The ALJ summarized Naser Kamkar, M.D.'s records from 2011 through 2012. (Tr. 726). She also summarized in detail a consultative psychological examination by Cheryl Kasprzak, Psy.D. conducted on May 14, 2012. (Tr. 726-27). The ALJ noted that Dr. Kasprzak diagnosed Plaintiff with PTSD, bipolar two disorder, severe without psychotic features, panic disorder with agoraphobia, and ADHD, predominantly inattentive type. (Tr. 727). Finally, the ALJ summarized medical records from Kenneth Berdick, M.D. from 2016 through 2017. (Tr. 727-28). The ALJ noted that current medical

evidence demonstrated that Plaintiff continue to have impairments but has responded favorably to therapy and medications. (Tr. 725).

At finding 7, the ALJ compared medical evidence at the time of the CPD with evidence at the time of review in April 2017, and found that Plaintiff no longer met or medically equaled the same listing (Listing 12.04) that was met at the time of the CPD. (Tr. 728). Thus, the ALJ considered prior Listing 12.04. Basically, the ALJ found medical improvement in Plaintiff's ability to work because "there has also been an increase in the claimant's functional capacity to perform basic work activities as shown by the claimant's ability to perform work activities." (Tr. 728-29). The ALJ later discussed the medical evidence after the CPD to support this finding. (Tr. 731-35). Even if not every medical record were in the file form the time of the CPD, the ALJ reviewed medical records from around the time of the CPD as well as before and after that time, compared them, and concluded that Plaintiff's disability ended on April 1, 2017, and she had not become disabled again since that date. Substantial evidence supports the ALJ's decision.

### C.    Explanation of Determination

Plaintiff contends that the SSA advised her that she could perform work which required only a very short, on-the-job training period. (Doc. 13, p. 21 (citing Tr. 92)). Plaintiff argues that these types of jobs equate to an SVP 1, not an SVP 2, such as

one of the jobs listed by the ALJ as a job Plaintiff was able to perform. (Doc. 16, p. 26-27).

Explanations of Determination are prepared by disability examiners. *Martinez v. Kijakazi*, No. 8:20-cv-1025-TPB-AEP, 2021 WL 4482616, at *14 (M.D. Fla. Aug. 23, 2021), *report and recommendation adopted*, No. 8:20-cv-1025-TPB-AEP, 2021 WL 4478248 (M.D. Fla. Sept. 30, 2021) (citing SSA Program Operations Manual System ("POMS") DI 24501.001B(1)(d)(1)-(2)). "Notably, the SSA considers findings made by a state agency disability examiner at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether a claimant is disabled to constitute evidence that is 'inherently neither valuable nor persuasive.'" *Id.* (citing 20 C.F.R. § 404.1520b(c)(2)). And under the regulations, an ALJ need not provide any analysis about how she considered such evidence in rendering a decision. *Id.* (citing 20 C.F.R. § 404.1520b(c)). Thus, the ALJ was not required to consider the Explanations of Determination in rendering the decision.

### III.   Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The

Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on June 28, 2024.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties